IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                           No. 1:18-cr-01828-JCH

SHAKEAM J. KINNEY and
LALONZO SIMMONS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

The relevant facts of this case arise from a series of four armed robberies of Subway restaurants and marijuana dispensaries in the spring of 2018. Early police investigation of the first robbery zeroed-in on a man named C. Ramos-Goodrich as a primary suspect. However, Mr. Ramos-Goodrich dropped-out as a suspect when surveillance of him produced no leads and a state judge refused to authorize a warrant for his arrest. Meanwhile, three more robberies unfolded, and a trail of clues pointed to Defendants as suspects. So police went to a different state judge and obtained warrants to search Defendants' homes. In the accompanying affidavits, police made no mention of Mr. Ramos-Goodrich's earlier role as a suspect or the fact that a judge had previously denied a warrant for his arrest.

The second judge authorized the search warrants and police executed the warrant on Defendant Shakeam J. Kinney's home, police found numerous firearms in Mr. Kinney's home, leading to federal charges. Mr. Kinney filed a motion to suppress evidence of the firearms, arguing that under *Franks v. Delaware*, 438 U.S. 154 (1978), the police's failure to mention Mr. Ramos-Goodrich in their affidavits amounted to material omissions that affected the issuing

judge's probable cause determination. The Court held a hearing on the motion on February 5, 2019. After carefully considering the motion, briefs, evidence from the hearing, and relevant law, the Court concludes that the motion should be denied.

I.   FACTUAL BACKGROUND

The Court makes the following findings of fact, as supported by the record, in accordance with Rule 12(d) of the Federal Rules of Criminal Procedure.

On March 19, 2018 two individuals robbed a Subway restaurant in Albuquerque, New Mexico by gunpoint. The restaurant employees described one of the robbers as a six-foot-five-inch African-American male, 250-plus pounds, dressed in black and carrying an AK-47 style rifle. The second robber was described as an African-American or Hispanic-American male of average height and build with facial hair and carrying a handgun. The robbers fired bullets in the restaurant, leaving behind casings which officers sent to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) for testing. Video footage captured the robbers fleeing in a Dodge Caravan with the license plate clearly visible.

Albuquerque Police Department Detective Tyler Burt traced the Dodge's license plate to a man named A. Salazar-Amador, who lived at the Continental Arms Apartments, an apartment complex in Southeast Albuquerque.[1] Police surveilled the Dodge, Mr. Salazar-Amador, and the apartment complex for a while. But the surveillance of Mr. Salazar-Amador generated no leads that he was involved in the robbery. However, from time-to-time police did observe a different man at the apartment complex who physically resembled the description of the larger Subway robber. Officers learned that this man's name was C. Ramos-Goodrich and that he and Mr.

---

[1] As it happens, Mr. Kinney also resided at the Continental Arms Apartments.

Salazar-Amador were Facebook friends. These facts led officers to suspect that Mr. Ramos-Goodrich was the larger of the Subway robbers.

Detective Burt assembled a photo line-up that included Mr. Ramos-Goodrich's photo and showed the photos to the Subway employees. Neither employee positively identified anyone. One employee did say that Mr. Ramos-Goodrich "kinda" looked like one of the robbers, but ultimately concluded that Mr. Ramos-Goodrich was not the robber because the employee knew Mr. Ramos-Goodrich and so knew he was not the perpetrator. The other employee said that Mr. Ramos-Goodrich could have been the robber, saying that he was 60% certain of that identification.

Based on the employees' statements, Mr. Salazar-Amador and Mr. Ramos-Goodrich's Facebook friendship, Mr. Ramos-Goodrich's presence at the apartment complex, and Detective Burt's review of the Subway video footage, Detective Burt applied for an arrest warrant for Mr. Ramos-Goodrich on March 23, 2018. The judge denied the warrant, finding no probable cause. Detective Burt did, however, obtain a warrant to search Mr. Ramos-Goodrich's historical cellular phone data to discern whether the phone's tracking data would have placed him at the Subway on the day of the robbery.

On April 3, 2018, two same-day armed robberies occurred, one of another Subway restaurant and one of a marijuana dispensary. Only one individual robbed the Subway restaurant that morning, while two individuals robbed the marijuana dispensary later in the day. A witness at the second robbery described one of the suspects as a "huge" African-American man, standing at about six feet and five inches. The second suspect, the shorter of the two, wore black and neon green Nike running shoes. A silver Mercedes sedan was used in both robberies.

Detective Burt traced the Mercedes' license plate to Defendant Lalonzo Simmons. Detective Burt's search of the Motor Vehicle Database showed that Mr. Simmons was six-foot-five, African-American, and weighed 290 pounds. The next day, on April 4, officers obtained a warrant to place a GPS tracker on Mr. Simmons' car. Moreover, Detective Burt's review of the video footage from the first Subway robbery on March 19, 2108 and the marijuana dispensary robbery showed that the taller suspect wielded the same distinctive rifle in each robbery. It was at this point that Detective Burt realized that officers misidentified Mr. Ramos-Goodrich for Mr. Simmons.

Meanwhile, on April 9, 2018 ATF got back to Detective Burt about the two bullet casings found at the first Subway restaurant robbery from March. According to ATF, the casings were connected to casings recovered from a shooting that happened across the street from the Continental Arms Apartments. This shooting occurred two-days after the first Subway robbery, or on March 21, 2018. Officers spoke to the Continental Arms Apartment manager, who said that she saw Mr. Kinney entering the building after the shooting. At that point police earnestly suspected Mr. Kinney was involved in that shooting and possibly the robberies because of the matching bullet casings and his physical resemblance to the smaller of the robbers seen on video footage. Police began surveilling Mr. Kinney throughout April 2018. On April 10, 2018, for example, officers saw Mr. Kinney at the Continental Arms Apartments wearing black and neon green Nike shoes. Detective Burt no longer considered Mr. Ramos-Goodrich a suspect in any of the robberies.

On May 1, 2018 at about ten o'clock in the morning, Defendants were allegedly seen on video robbing another marijuana dispensary by gunpoint. Footage allegedly captured Mr. Kinney entering the dispensary with his face uncovered, firing a round into the ceiling, and putting a gun

to an employee's head as she emptied the cash register. Mr. Simmons was filmed standing guard at the door. Two-minutes later, the men fled in a stolen getaway truck that was found abandoned about an hour later. The GPS tracker on Mr. Simmons' Mercedes revealed that the Mercedes was in the same location where the truck was found abandoned, suggesting that the Mercedes retrieved Defendants from the getaway truck.

Arrest warrants were assembled. At 7:52 P.M. a state judge signed a warrant to search Mr. Kinney's apartment, which officers executed at 8:56 P.M. However, the Computer Aided Dispatch or "CAD" report had a notation – "Entry is Inside" – at 7:31 P.M, roughly 20 minutes before the judge signed the search warrant. Detective Burt could not explain the chronology of entries appearing on the CAD report and why the "Entry is Inside" notation appeared before the judge authorized the warrant because he was not on the scene. But he stated his belief that officers made pre-entry into the home to perform a protective sweep to ensure the house was safe for entry.

## II. PROCEEDINGS

On May 31, 2018, a grand jury charged Defendants in a four-count indictment that stemmed from the alleged fourth robbery of the marijuana dispensary on May 1, 2018. *See* Redacted Indictment, ECF No. 16; Criminal Complaint, ¶¶ 7-52, ECF No. 1. Count I charges Defendants with violating the Hobbs Act, 18 U.S.C. § 1951(a) for interfering with interstate commerce by robbery and violence. Count II charges Defendants with brandishing and discharging firearms in furtherance of the robbery in violation of 18 U.S.C. § 924(c). Finally, Counts III and IV separately charge Defendants with being felons in possession of a firearm. On February 13, 2019, a grand jury returned a superseding indictment against Defendants. *See* Superseding Indictment, ECF No. 61. The superseding indictment largely maintained the original

counts against Defendants, but added counts stemming from the March 19, 2018 Subway robbery (Counts I and II), the April 3, 2018 marijuana dispensary robbery (Counts III and IV). *See id*.

In his motion to suppress evidence, Mr. Kinney contended that the "central issue" in the original indictment was the identity of the robbers. Given that Mr. Kinney and Mr. Ramos-Goodrich both had a presence at the Continental Arms Apartments complex, Mr. Kinney believes that Detective Burt should have included all of the background facts concerning Mr. Ramos-Goodrich in his search warrant affidavit to the issuing judge. That aside, in his motion and at the suppression hearing Mr. Kinney suggested that officers' warrantless pre-entry was unjustified.

### III. LEGAL STANDARD

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause …." U.S. Const., amend. IV. A search warrant must be based upon probable cause, which a reviewing court determines by examining the affidavit supporting the warrant. *See United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011). The court determines the "sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring that the magistrate had a substantial basis for concluding that probable cause existed." *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). Probable cause to search or seizes exists when, under the totality of the circumstances, "there is a fair probability that the contraband or evidence of a crime will be found in a particular place." *Illinois*, 462 U.S. at 238.

Mr. Kinney contends that officers' alleged omission concerning Mr. Ramos-Goodrich affected the state judge's probable cause determination and that suppression of the firearms is required under *Franks*. "Under *Franks,* a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." *United States v. Kennedy,* 131 F.3d 1371, 1376 (10th Cir. 1997). "[T]he standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods." *Id.* "To establish reckless disregard in the presentation of information to a magistrate judge, there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations ... and [a] factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014). The district court must suppress evidence if it finds, by a preponderance of the evidence after a hearing, that the affidavit contains false statements or material omissions that were essential to the authorizing judge's probable cause determination. *Kennedy,* 131 F.3d at 1376.

Normally a defendant must make a "substantial preliminary showing" to be entitled to an evidentiary hearing to demonstrate a *Franks* violation. *Franks,* 438 U.S. at 170. "Defendants must point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) (citations and quotations omitted). It is within the district court's discretion to hold a *Franks* hearing even if a defendant does not make a substantial preliminary showing. *See United States v. Herrera*, 782

7

F.3d 571, 573 (10th Cir. 2015) (stating that under *Franks* judges have discretion to "allow a claimant a fuller hearing that the law demands" and that courts often "err on the side of granting more process that might be strictly necessary[.]").

## IV. ANALYSIS

The Court analyzes whether Mr. Kinney, by a preponderance of the evidence, has carried his burden of proof under the first-prong of *Franks* to show that Detective Burt's search warrant affidavit contained material omissions. In the portion of the search warrant affidavit at issue, Detective Burt describes the first Subway robbery as follows and stated in full:

> I have been investigating a series of armed robbery [sic] that have occurred within the Albuquerque Metro Area beginning in 03/19/2018. During the robberies … the suspects have been armed with handguns and assault rifles. The suspects have discharged their weapons during two separate robberies. One suspects [sic] is described to be a dark complicated [sic] African American male who is described to be approximately 6'5'' 290 lbs. The second suspect was described to be a lighter skinned African American or possibly Hispanic.
>
> Through my investigation of … this case the registered owner of the Mercedes … was identified as Lalonzo James Simmons. Through MVD Lalonzo is described to be 6'5'' tall and weighs 290 lbs. The vehicle has been under surveillance and Detectives have identified Lalonzo as driving the vehicle.

Def.'s Mot. to Suppress, ECF No. 39-2 at 4.

Mr. Kinney contends that Detective Burt omitted the history of "significant investigative work" of Mr. Ramos-Goodrich including: (a) the Subway employees' potential identification of Mr. Ramos-Goodrich as a suspect; (b) Mr. Salazar-Amador and Mr. Ramos-Goodrich's Facebook friendship; (c) Mr. Ramos-Goodrich's presence at the Continental Arms Apartments where the Dodge was parked; (d) Detective Burt's "positive identification" of Mr. Ramos-Goodrich as the assailant after his review of the Subway's video footage; and (e) the fact that Detective Burt obtained a warrant to search Mr. Ramos-Goodrich's historical cell phone data associated with his location on the day of the robbery. Mr. Kinney also argues that the affidavit

8

should have noted that four-days after the first Subway robbery, Detective Burt applied for and was denied an arrest warrant for Mr. Ramos-Goodrich. Had all this information been provided to the issuing judge, no warrant would have issued.

Mr. Kinney has failed to carry his burden of proof, by a preponderance of the evidence, to show that the challenged portions of the affidavit contained omissions. "[I]n order to invalidate a warrant based on a reckless omission, the information excluded from the affidavit must be material to the magistrate judge's finding of probable cause." *Kennedy,* 131 F.3d at 1377. "An omission is material if it is so probative as to negate probable cause." *United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012) (citations and quotations omitted). Even if the affidavit included every detail about the investigation of Mr. Ramos-Goodrich and the fact that a different judge had previously denied a warrant for his arrest, the issuing judge would have granted the search warrant all the same The issuing judge was presented with information from a presumably reliable source, the apartment complex manager, that Mr. Kinney was seen entering the complex after a nearby shooting and that casings found from that shooting were from the same gun used in the first Subway robbery. The affidavit additionally explained that Mr. Kinney was visibly seen robbing a business on camera and that the Defendants fled in a stolen getaway truck; that police had already connected Mr. Simmons' Mercedes to another robbery; and that the same Mercedes was tracked to the site where Defendants abandoned the stolen truck.

These facts supported probable cause and no information about Mr. Ramos-Goodrich would have altered that result. The judge who refused to authorize Mr. Ramos-Goodrich's arrest did so for good reason: much of the information about him was indeterminate. His presence at the apartment complex and Facebook friendship with Mr. Salazar-Amador were innocuous details that did not amount to probable cause. While Detective Burt "positively identified" Mr.

Ramos-Goodrich as one of the perpetrators of the first Subway robbery days after it occurred, one of the Subway employees who knew Mr. Ramos-Goodrich told the detective that he was not involved. No facts concerning Mr. Ramos-Goodrich would have altered the issuing judge's finding of probable cause, especially since that judge was told that video footage of the fourth robbery showed Mr. Kinney's face uncovered. Because the facts concerning Mr. Ramos-Goodrich would not "negate probable cause," *Ruiz*, 664 F.3d at 838, the Court finds that Detective Burt did not recklessly omit material facts from the affidavit presented to the issuing judge.

V. **CONCLUSION**

**IT IS THEREFORE ORDERED that** Defendant Shakeam Kinney's Motion to Suppress Evidence Based on *Franks v. Delaware* Omissions in Search Warrant **[ECF No. 39]** is **DENIED**.

**IT IS SO ORDERED**.

Judith C. Herrera
U.S. District Judge